In re Anonymous No. 4 D.B. 78

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

HARRINGTON, *Board Member*, February 1, 1979—Pursuant to Rule 208(d)(iii) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

At the above number a petition for discipline was filed by the Office of Disciplinary Counsel naming [ ] as respondent therein. In due course, the matter was assigned to hearing committee [ ], comprised of [ ], Esq., [ ] Esq., Members, and [ ], Esq., Chairman. The matter came before the hearing committee on April 7, 1978, at the Office of Disciplinary Counsel [ ]. Office of Disciplinary Counsel was represented by [ ] and [ ]. Respondent was present at all times during the hearing, testified in his own behalf and was represented by [ ]. Stipulations were entered into, exhibits were offered and admitted and the testimony of several witnesses and respondent were taken. After testimony was closed, the hearing committee reported its conclusion that respondent had violated the following Disciplinary Rules:

D.R. 1-102(A)(4) involving dishonesty, fraud and deceit.

D.R. 1-102(A)(5) dealing with conduct prejudicial to the administration of justice.

D.R. 1-102(A)(6) dealing with conduct that adversely reflects upon an attorney's fitness to practice law.

D.R. 7-101(A)(3) dealing with intentionally prejudicing or damaging a client during the course of a professional relationship.

D.R. 7-102(A)(7) dealing with the lawyer's counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent.

The hearing committee's recommendations were that respondent, [   ], "be suspended from the practice of law for a period of six (6) months."

Disciplinary counsel and respondent both filed briefs on exceptions to the report of the hearing committee.

This board adopts the findings of fact and conclusions of law of the hearing committee as well as its recommendation and recommends to this honorable court that [Respondent] be suspended from the practice of law for a period of six months.

## II. FINDINGS

Respondent was admitted to practice on May 14, 1971. From that date until October 30, 1975, he practiced in [   ] County, in the office of [A], Esq., and was associated with Mr. [A]. In 1975, respondent disassociated himself with Mr. [A] and, at the times complained of, he maintained an office at [   ], in [   ] Pa., and a separate office for the practice of law in which he maintained evening hours at [   ] Street, [   ], [   ] County, Pa. Respondent specializes in the areas of workmen's compensation, labor law and various forms of litigation.

Complainant, [B], resided at [   ] Street in [   ], [   ] County, Pa., in March of 1977, when he retained respondent to represent him in a divorce action. [B] was in the business of selling citizens band radios and maintained a store for the sale of these radios at some time during the period in question in [   ], Pa.

[B] had been represented by respondent on a number of occasions prior to March of 1977. He had retained respondent to represent him in a prior divorce case; a lawsuit concerning Polynesia swimming pools; a case of an automobile accident and in an incident wherein [B] was hurt "in the middle."

[B] and respondent were "very good friends."

About March 11, 1977, [B] retained respondent to represent him as plaintiff in a divorce action. At the time, [B] explained that his wife, [ ], would not contest the divorce action, and that he was anxious to obtain the divorce as quickly as possible as he did not want another young woman with whom he was keeping company to find out that he was then married. [B] further explained to respondent that his girl friend was pregnant, which created another reason for urgency in commencing the divorce action. Respondent set a fee and told defendant it would "take a couple of months."

The complaint in divorce was filed on March 11, 1977, and defendant was served on April 5, 1977. The decree granting the divorce was signed June 30, 1977, or something less than 90 days after service.

Shortly after [B] retained respondent, he began to call respondent's office to check on the progress of the divorce. According to [B], he called two times a week. According to [ ], respondent's secretary, [B] called five to eight times per week. As time passed the telephone calls became more frequent and [B] became more excitable and at times abusive toward respondent and his secretary. In May or June, [B] testified that he received a letter from respondent instructing him to appear for a hearing on the divorce case at the courthouse in [ ], Pa. [B] appeared but respondent did not. As might be ex-

pected, [B] became furious and immediately contacted respondent by telephone. After that telephone conversation with respondent, he drove "like a bullet" to respondent's office in [ ], Pa. When [B] arrived at the [ ], Pa., office of respondent, there was an unpleasant scene at which time respondent testified that [B] threatened him in the following terms: "If you don't do something, look out. I am going to get you one way or the other." Respondent further testified that he reacted to this situation by apologizing for having missed the appointment in [ ] County and in an effort to mollify the outraged client, respondent persuaded [B] to tape record the answers to certain questions, which respondent said he would try to get admitted as testimony in the divorce action. Respondent testified that he was aware that such procedure would not be admitted in court as testimony and that it was done simply to deceive his client and to get him "calmed down." According to [B], the tape recording was to be given to a judge as a substitute for [B]'s personal appearance in court. [B] further testified that the judge to whom the tape was to be given was a "buddy" of respondent for whom respondent had done political work. Respondent denies that categorically.

Within a short time thereafter (probably about the middle of June), [B] appeared at respondent's office in [ ], Pa., at which time some unpleasantness occurred. [B] demanded the divorce decree so that he could marry his then pregnant girl friend. According to respondent, [B] wanted the decree to show to his girl friend in order to reassure her of his honorable intentions toward her. The outcome of the confrontation between respondent and [B] was that respondent agreed to supply a paper that purported to be a divorce. [B] testified that respondent

knew of [B]'s intentions to use the divorce in order to promptly marry the girl friend. Respondent testified in a more convincing manner that the paper was given to [B] for the purpose of deceiving his girl friend only, and was not to be used in any official capacity whatsoever.

At any rate, respondent then instructed his secretary to retrieve an [  ] county divorce decree form from another file, to "white out" the names on that form and insert the names of [B] in the appropriate places. After this had been done, respondent signed the names of [  ], prothonotary and [  ], judge. [B] promptly took the bogus decree to Cumberland, Maryland, and presented it as part of his application for a marriage license. The application was not accepted, and [B] thereafter notified respondent of these events.

At a later time, respondent did represent [B] in a hearing and the divorce was finally granted on June 30, 1977.

## III. DISCUSSION

Both petitioner and respondent have filed briefs on exceptions. Petitioner urges the board to carefully consider the record of proceedings before the hearing committee and to review the prior disciplinary record of respondent and thereafter recommend to the Supreme Court a three year suspension.

Respondent criticizes the hearing committee recommendation for six month suspension as "excessive" and would have this board modify the discipline by a recommendation for probation. Such a suggestion is not acceptable. Respondent's conduct was so offensive to the letter and spirit of the Code

of Professional Responsibility and to the fundamental ethical principles upon which that code is based that probation is not appropriate discipline. He has been dishonest and deceitful in ways that are calculated to bring into question the integrity of the judicial system and to bring dishonor to the legal profession. The public and the profession will be protected from such reckless conduct only by removing the attorney from a position in which he can cause such harm until he can satisfactorily demonstrate that he is fit to return to the practice of law: Berlant Appeal, 458 Pa. 439, 328 A. 2d 471 (1974), cert. denied 95 S.Ct. 1953 (1974). Further, respondent's argument lacks persuasiveness when considered in the light of his prior disciplinary record. On six different occasions, he has conducted himself so as to be in violation of various sections of the Code of Professional Responsibility. Several violations included misrepresentations made to his clients and others in a fashion similar to the manner employed in the present case. Four times in the past, respondent was found to be in violation of Disciplinary Rule D.R. 1-102(A)(4): "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." (Petitioner's Exhibit 11, 12, 13, 15-A) On three of the four occasions, chief disciplinary counsel administered and respondent accepted informal admonitions. The fourth matter resulted in a recommendation by the hearing committee that respondent be given a private reprimand by the board. In discussing the case, the hearing committee wrote in part:

"In other circumstances, the wrongs committed by the respondent could justify public censure or even suspension from practice. It is difficult to

overlook the pattern of deceit which runs through this case and we do not do so. However, we feel the youth, newness to the practice of law and emotional immaturity of the respondent call for a less severe punishment than that which otherwise might be required. Since the main purpose of disciplinary proceedings is to insure the protection of the public and not punishment for its own sake, we believe that goal can be effectively accomplished by a private reprimand. We believe that action, coupled with the lasting record of it, will teach the lesson and at the same time enable this young attorney to continue to develop what appears to be an otherwise well conducted practice." (Petitioner's Exhibit 15-B)

On February 6, 1976, the chairman of the disciplinary board administered the private reprimand, which included the warning: "Any subsequent transgressions on your (respondent) part can only result in further discipline and perhaps more drastic sanctions. We sincerely hope that you will comport yourself in such a manner that future disciplinary action will be unnecessary." (Petitioner's Exhibit 15-A)

Respondent has rejected the hearing committee's attempt to "teach the lesson" by the comparatively moderate recommendation for private reprimand. He has rejected the temperate warning by the chairman included in the private reprimand and has again tested the system. Should your honorable court accept the recommendation of this board "further discipline" and "more drastic sanctions" will surely follow "subsequent transgressions."

Petitoner's carefully detailed factual review highlights respondent's grave misconduct in light

of which petitioner would have the board recommend a very severe three year suspension. Keeping in mind that the primary purpose of lawyer discipline is to protect the public and maintain the integrity of the judicial system: Matter of Green, 470 Pa. 164, 368 A. 2d 245 (1977); the imposition of excessive discipline should be avoided. In appropriate cases, mitigating circumstances should be taken into account. As outlandish and bizarre as respondent's conduct appears to be, there may have been certain mitigating circumstances.

Respondent's conduct did not inure to his personal or professional benefit. His course of action appears to be more reaction than action. When confronted by a belligerent, boisterous client, demanding that respondent extricate him from an embarrassing social situation, respondent retreated to the most expedient course of conduct and instructed his secretary to alter a divorce decree form (not yet signed by the judge) by substituting the name of [B] and his wife for that of the names already typed on the divorce decree form. At the time this was done, respondent testified that he was intimidated by his client, who had previously made certain threats directed toward respondent. Respondent repeatedly testified that he gave [B] the altered divorce decree form in order that [B] could show his girl friend something to prove his good intentions; and further that [B] had been warned not to attempt to use the altered divorce decree form or to show it to anyone else. [B] denies respondent's testimony, but an examination of the paper (petitioner's Exhibit 6) by anyone familiar with legal documents would instantly reveal the alteration and would bring the authenticity of the document into question. The purpose for which the bogus decree was given to [B], whatever it may have been, does not

excuse the fact that it was prepared to deceive and that it contains the forged signatures of the prothonotary and the judge of the court of common pleas. It does appear highly unlikely, however, that respondent ever intended that the paper should be used for any purpose other than the one already discussed.

Disciplinary Board Rule Section 89.151 permits respondent to offer such evidence as may be relevant and material on the issue of the type of discipline to be imposed. In his Exhibit A respondent has submitted substantial information of a personal nature and has attached thereto several letters which were marked as exhibits, and which tend to bear on the type of discipline to be imposed. The letters include "recommendations" and expressions of confidence in respondent from members of the bar of the several counties of [   ] (respondent's Exhibit G and J), and [   ] (respondent's Exhibit H), [   ] (respondent's Exhibit B and D) and [   ] (respondent's Exhibit I). Similar complimentary letters from clients (respondent's exhibits C, D, and E) were included. While statements of opinion concerning one's character and confidence cannot be substituted for those traits, it is helpful and sometimes persuasive to have such expressions from knowledgeable sources in the record.

As the hearing committee was careful to note in its recommendation to this board: "The committee realizes the gravity of the recommendation (six month suspension) but the committee is also cognizant that the respondent has received four informal admonitions and a private reprimand . . . prior to the instant case." (hearing committee recommendation) The members of the hearing commit-

tee are respected members of the bar of the Commonwealth of Pennsylvania generally and in the areas in which they practice. They have carefully considered the facts and surrounding circumstances and their recommendations must be given great weight. To those who would argue in favor of much more severe discipline, it should be taken into account that the punishment of suspension is a severe and humiliating professional and social experience. The rules require that notice of suspension shall be published in the legal journal and a newspaper of general circulation in the community in which the attorney practiced. The notice of suspension shall also be sent to all clients being represented by the attorney, in which notice the attorney must advise the client in litigation to retain substitute counsel. During the period of suspension, he shall not accept any new retainers or engage as an attorney in any new case while under suspension and the attorney may not resume practice until he has demonstrated by "clear and convincing" evidence that he " . . . has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth . . . ," and other similar stringent requirements: Pa.R.D.E. 217, 218.

The recommendation of the hearing committee and its adoption by this board appears to be consistent with recent action by the Supreme Court of Pennsylvania: [   ] in the Supreme Court of Pennsylvania. In the cited case, respondent admitted paying bribes to public officials. The hearing committee recommended a suspension of six months, which recommendation was modified by this board and forwarded to your honorable court suggesting a

suspension for a period of three years from the practice of law. On January 16, 1979, the Supreme Court rejected the board recommendation and suspended respondent for a period of six months from the date of the order.

## RECOMMENDATION

For the reasons set forth above, the disciplinary board recommends to your honorable court that respondent, [ ], be suspended for a period of six months with the right to apply for a reinstatement at the conclusion of the period of suspension.

Mr. Reath dissented. Mr. Anderson did not participate in the adjudication.

## DISSENTING OPINION

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

REATH, *Board Member*, February 1, 1979—I dissent from this recommendation. Respondent prepared a bogus divorce decree and forged the signature of a judge to cover up for his failure to secure a divorce decree.

When an officer of the court commits such an atrocious act, the public would be, I suggest, shocked and outraged at such a mere slap on the wrist as a mere six month suspension; and without any official condemnation of this kind of act by way of censure by this court.

I see nothing in Rule 204 that prevents combining two or more forms of discipline. While I would have been more comfortable with a three year suspension, I would have been willing to go along with

a six month suspension, provided this was combined with a public censure and the attendant public exposure that would result from this court's strong public condemnation of respondent's conduct.

## ORDER

EAGEN, *C.J.*, And now, March 5, 1979, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated February 1, 1979, is accepted; and it is ordered, that the said (Respondent), be, and he is herewith suspended from the practice of law for a period of six months from the bar of this court and in all the courts under its supervisory jurisdiction.

It is further ordered that an application for reinstatement may be filed at the conclusion of the period of suspension.

Mr. Justice Larsen would impose a suspension of one year.