368 A.2d 245

**In the Matter of Paul GREEN (Philadelphia County).**

Supreme Court of Pennsylvania.

Argued Nov. 21, 1975.

Decided Jan. 28, 1977.

John W. Herron, Asst. Disciplinary Counsel, Philadelphia, for Disciplinary Bd.

Donsky, Katz, Levin & Dashevsky, Eli N. Donsky, Joseph N. Bongiovanni, Jr., Philadelphia, for Green.

Before EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

The Disciplinary Board of the Supreme Court of Pennsylvania has recommended that respondent, Paul Green,

be disbarred from the practice of law by this court for professional misconduct occurring during his representation of Mrs. Patricia Davis and her minor child, Ronald L. Davis, Jr. We review this recommendation pursuant to Pa.Supreme Ct.Rule 17–8(c).

I. Review of the Recommendation of the Disciplinary Board.

The facts surrounding this matter are as follows. On October 28, 1971, Patricia and Ronald L. Davis retained respondent to represent Mrs. Davis and their minor son, Ronald, Jr., regarding an automobile accident claim. The contingent fee agreement established the following terms: a one-third share of the claim of Ronald L. Davis, Jr. and a one-half share, after medical expenses, of the claim of Patricia Davis. In November, 1971, Allstate Insurance Company issued a check made payable to the Davises in the amount of $303 for certain medical costs. This check was endorsed over by the Davises to respondent, who deposited the proceeds in his attorney account. In March of 1972, Allstate made a supplemental medical payment in the amount of $136. This check was made payable to the respondent as attorney for the Davises. The proceeds were deposited in respondent's account with no notification to the Davises of the check's receipt.

Later, in March of 1972, respondent settled the accident claim of his clients. On March 22, 1972, the Government Employees Insurance Company issued a check in the amount of $2,222.93 payable to the Davises individually and as guardians of their minor child, Ronald, Jr., and respondent. Again the Davises endorsed the check to respondent who deposited the amount in his account.

From April, 1972 until July, 1972, the Davises demanded payment of the proceeds of the insurance company's settlement and an accounting of the expenses. In response to the demands, respondent claimed that the

bank had lost the draft and a new draft would have to be drawn. On July 21, 1972, respondent sent the Davises a check for $1,481.96, which represented their recovery for the auto claim, minus respondent's contingent fee. The Davises attempted to cash the above check only to be told by the bank that respondent had insufficient funds in his account to cover the check. The amount of the overdraft was a minimal amount and the bank subsequently honored the check. From July, 1972 until May, 1973, the Davises continued to demand that respondent pay a medical bill, and to provide them with an accounting of the expenses. On May 8, 1973, respondent paid the final medical bill and rendered an accounting of the expenses incurred in settling the claim.

The Disciplinary Board conducted an investigation and informed respondent by letter on May 8, 1973, that this investigation revealed possible improprieties in the handling of the funds that the Davises were to receive in settlement of the negligence case. The allegations were referred to a hearing committee which, after taking testimony, agreed with the result of the preliminary investigation that respondent improperly withheld and delayed paying funds due and owing to the Davises. The Disciplinary Board made substantially similar findings as the hearing committee and as detailed in this opinion.

Our standard of review in attorney disciplinary cases is *de novo* review; we are not bound by the findings of either the hearing committee or Disciplinary Board except as guidelines for judging credibility of witnesses. See *Office of Disciplinary Counsel v. Boyd H. Walker*, 469 Pa. 432, 366 A.2d 563 (1976).

Our review of the above facts indicate a studied course of deceit, fraud and misrepresentation by the respondent in the handling of his clients' legal and financial affairs. Respondent delayed four months after the settlement of the insurance claim before sending the Davises a check. Respondent attempted to excuse the delay by misrepre-

senting to the Davises that the bank had lost the check when in fact his account contained insufficient funds. When the Davises finally received the check, the respondent's bank refused to pay because of insufficient funds. The bank subsequently honored the check. The respondent again procrastinated for a ten-month period in giving the Davises an accounting of the expenses and paying a final medical bill.

The respondent's conduct was not an isolated instance. On May 30, 1973, three weeks after the Disciplinary Board had informed respondent that an investigation of his handling of the Davises' claim revealed possible improprieties, the Board filed a petition for discipline against respondent in an unrelated matter. This petition related facts concerning the mishandling, misappropriation and conversion by respondent of a $10,000 United States treasury bill in the settlement of the Estate of Frederick W. Goettelman. The facts surrounding the Goettelman case are similar to the misrepresentations in the instant case.

In 1966, respondent was retained to represent the Estate of Frederick W. Goettelman. The value of the estate was approximately $14,000, mostly cash. In October, 1966, respondent, with the consent of the executor, purchased a $10,000 treasury bill with the assets of the estate and deposited the treasury bill in his safety deposit box. In April of 1967, the respondent, without the consent of the executor, deposited the treasury bill in his checking account and used the proceeds for his own personal benefit. After numerous inquiries and requests by the executor to cash the treasury bill and settle the estate, respondent claimed that the treasury bill was lost.

In September of 1973, at the insistence of counsel, he borrowed $10,000 and deposited this amount in the account of the estate. Respondent subsequently borrowed an additional $3,600, representing 6% over the six years that he had converted the estate funds to his own person-

al use. Respondent was suspended from the practice of law for one year from March 29, 1974 until March 29, 1975. See *In the Matter of Paul Green*, 72 Disciplinary Docket No. 1.

We have examined this record and find sufficient evidence to support the conclusion that respondent has violated: Disciplinary Rule 1–102(A)(3)—dealing with illegal conduct involving moral turpitude; Disciplinary Rule 1–102(A)(4)—engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; Rule 1–102(A)(5) and (6)—conduct prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law; Disciplinary Rule 7–102(A)(5)—knowingly making a false statement of law or fact; Disciplinary Rule 9–102(A)—not preserving identity of funds and property of clients; Disciplinary Rule 9–102(B)(1)—failing to promptly notify a client of the receipt of his funds; Disciplinary Rule 9–102(B)(3)—not maintaining complete records and not rendering appropriate accounting to his client; Disciplinary Rule 9–102(B)(4)—not promptly paying to the client, as requested, the funds in the possession of the lawyer which the client is entitled to receive.[1]

II.   Motion to Quash

On August 7, 1975, respondent filed a Motion to Dismiss the Report of Disciplinary Board. We now turn to a consideration of that motion.

Respondent first argues that the report of the Disciplinary Board is a nullity and should be disregarded because of the Board's noncompliance with Pennsylvania Supreme Court Rule 17–8(c) which requires the board to act upon the report of the hearing committee within sixty days after the conclusion of oral argument before the

1. The above being in violation of the Code of Professional Responsibility, effective January 1, 1970.

board or waiver of argument. We do not agree with respondent that the board's noncompliance with the sixty-day period renders their report invalid. In the instant case, respondent did not contest the report of the hearing committee and waived his right to oral argument. The board filed its report and recommendation ninety days after respondent's waiver of oral argument.

We are of the opinion that the technical violation of the Rule 17–8(c) directory time limit provision does not render the board's report invalid. Moreover, this court's scope of review being *de novo* review as to findings and recommendations of the board, we are of the opinion that the respondent has suffered no prejudice.

Respondent next argues that a "stipulation relating to a recommendation of punishment" entered into by assistant disciplinary counsel and counsel for respondent is binding on the board and this court. We do not agree. In the instant case, disciplinary counsel and respondent's attorney entered into a stipulation before the hearing committee that the punishment, if respondent was found to have committed a breach of the Code of Professional Responsibility, would be a concurrent one-year suspension from the practice of law with respondent's previous one-year suspension, which would have already expired.[2]

The board rejected this "stipulation" and recommended that respondent be disbarred from the practice of law.

This court, in *Office of Disciplinary Counsel v. Boyd H. Walker, supra,* stated:

" . . . A Hearing Committee imposes no discipline. It takes evidence and submits a report and recommendation to the Disciplinary Board in every case. The Disciplinary Board may then dismiss the charges, or, if it sustains them, may either impose a private reprimand or recommend to this Court a more severe

2. See *In the Matter of Paul Green,* 72 Disciplinary Docket No. 1.

sanction. If the latter course is chosen, discipline is imposed by this Court; all prior proceedings result in nonbinding recommendations. It is clear that the Disciplinary Board is free, within the limits of Supreme Court Rule 17–4, to recommend whatever discipline it deems appropriate. It is also clear that this Court may impose whatever sanction it deems appropriate. See Supreme Court Rule 17–8(c).[7]

██ Only this court can impose the sanctions of disbarment, suspension and public censure and this court is free to adopt, reject or modify the proposed sanctions of the Disciplinary Board. Therefore, we are of the opinion that any "stipulation" entered into by the disciplinary counsel and respondent's counsel before a hearing committee was a nullity and could not inhibit or limit the duties of the board and of this court to *de novo* re-

"7. The discipline which may be imposed for professional misconduct pursuant to our rules of disciplinary enforcement is limited to (1) disbarment, (2) suspension not exceeding five years, (3) public censure, (4) private reprimand, or (5) private informal admonition. See Rule 17–4. The first three types of discipline are imposed by this Court, the fourth by the Disciplinary Board, and the fifth by Disciplinary Counsel. While the Disciplinary Board is limited in its recommendation to this Court to the first three types of discipline listed in Rule 17–4, this Court is not so circumscribed in the action which it may appropriately take. Forty years ago Chief Justice Kephart summarized the powers of the Court relative to discipline as follows:

" 'It is the right and duty of a court to discipline its members who appear before it guilty of wrongdoing. *In re Davies,* 93 Pa. 116; *Wolfe's Disbarment,* 288 Pa. 331, 135 A. 732. Courts have an inherent power to make and follow rules governing such matters or to formulate new rules as the case demands so long as no right of the member charged is invaded. But the rules thus established do not restrict the general power of the courts; the power which establishes such rules in the first instance also enables the courts to disregard such rules and adopt the methods most suitable to the occasion.'

"*In re Disbarment Proceedings,* 321 Pa. 81, 101, 184 A. 59, 68 (1936). See also *McLaughlin v. Philadelphia Newspapers, Inc.,* 465 Pa. 104, 348 A.2d 376, 380 (1975); *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616, 679 (1975); *In re Shigon,* 462 Pa. 1, 329 A.2d 235, 241 (1974). See also Preamble to the Rules of Disciplinary Enforcement, 446 Pa. xxiv, 286 A.2d LXXV."

view and their unfettered discretion to recommend punishment. The Board was moved to make its recommendations because of Green's having lied to it.

We realize that disbarment is the most serious discipline that we can impose. We are of the opinion, nonetheless, that the conduct of the respondent represents a pattern of fraud, misrepresentation and distortion, for which disbarment is warranted.

We accept the recommendation of the Disciplinary Board and, therefore, respondent, Paul Green, is disbarred from the practice of law in any court subject to the supervisory powers of the Supreme Court of Pennsylvania.

JONES, C. J., and ROBERTS, J., did not participate in the consideration or decision of this case.