**In re Anonymous No. 58 D.B. 77**

Disciplinary Board Docket No. 58 D.B. 77.

HENRY, *Member*, January 4, 1980—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petitions for discipline.

## 1. HISTORY OF PROCEEDINGS

On December 19, 1977, the office of disciplinary counsel filed a petition for discipline to 58 D.B. 77 alleging that respondent was actively engaged in the practice of law while on inactive status and that he had received a retainer fee from a client but failed to provide the services for which he was hired. Service of the petition upon respondent was delayed because of difficulty in locating him. In the interim, a second petition was filed to no. 9 D.B. 78 on February 13, 1978, alleging that respondent received a sum of money from a client to be paid to a second attorney upon receipt of a file. The petition charged that respondent commingled the funds with his own and converted them to his own use. Respondent was finally located and accepted service of both petitions on March 13, 1978. No answer was filed and the two matters were consolidated for hearing before hearing committee [ ]. A hearing on the merits was held on June 28, 1978, at which respondent was present but unrepresented by counsel. Following the hearing, respondent engaged counsel and briefs were submitted. On February 16, 1979, the hearing committee advised the

parties in interest that it had concluded that there was a violation of the disciplinary rules and a hearing on the discipline to be imposed, originally scheduled for March 16, 1979, ultimately convened on April 9, 1979. The hearing committee filed its report on August 27, 1979 recommending that respondent be disbarred. No exceptions have been filed and the matter was referred to this board for review and recommendation to your honorable court.

## II. FINDINGS OF FACT

The findings of fact by the hearing committee are supported by the evidence and are adopted by the board. For the convenience of the court they are set forth below:

A. Practice while on inactive status

1. Respondent has not paid the annual registration fee required pursuant to Pa.R.D.E. 219(a) of all attorneys engaged in the active practice of law in Pennsylvania for the years 1973, 1974, 1975, 1976, 1977, 1978.

2. Pursuant to his own request, respondent was placed on inactive status as an attorney on May 11, 1973 and has never filed a petition for reinstatement for the practice of law in the Commonwealth of Pennsylvania.

3. Respondent was aware of the requirement imposed upon active attorneys in this Commonwealth to pay an annual registration fee.

4. Respondent was engaged in the active practice of law in Pennsylvania during the years 1975, 1976, 1977.

5. Respondent maintained a law office in [ ] and held himself out as an attorney during the years 1976-1977.

6. Respondent, during all times pertinent hereto, was aware of and had read and studied the Code of Professional Responsibility.

7. Respondent never advised the court administrator of the fact the [ ] address is no longer his residence and has not provided the court administrator with a current address. :

B. [A] Complaint.

1. Respondent was retained in April, 1976 to represent one [A] on his post-conviction motion and appeal to the Pennsylvania Supreme Court of his first degree murder conviction.

2. Respondent was paid a fee in the amount of $1,350 in 1976 for such representation.

3. Respondent caused a defective habeas corpus petition to be filed on behalf of [A]. In June 1976, said petition was returned to him and never refiled.

4. Respondent never advised [A] where he could be located after April of 1977, at which time he left the [ ] area and has had no contact with [A] from that month through the present time.

5. The deadline for a brief to be filed with the Pennsylvania Supreme Court on behalf of [A] was established as August 30, 1977, and respondent was aware of such schedule.

6. Respondent had not filed a brief by the time he was contacted by [B] on August 28, 1977.

7. There is no evidence that respondent had the intention or has taken any steps to file a brief on or before August 30, 1977.

8. Respondent never advised the Pennsylvania Supreme Court of an address or telephone number where he could be contacted after April 1977.

9. Respondent never requested an extension of time of the August 30 deadline from the Pennsylvania Supreme Court to file a brief on behalf of [A]

and made no effort to petition to withdraw his representation.

C. [C] Complaint.

1. Respondent was retained to represent [C] in an action against [D] in July 1976.

2. [C] owed a law firm, which had represented him previously, and of which [E] was a member, a legal fee in the amount of $765.48.

3. In August of 1976, [C] gave respondent $750 to hold in an escrow account to be paid to the law firm when the legal file was received by respondent.

4. On September 27, 1976, respondent's secretary sent [C] a receipt for $750 which contained the words "fee for [E]."

5. Respondent sent a letter to [E]'s firm and requested the return of the file, advising that he was authorized to pay their legal fee.

6. [E] returned the file to respondent.

7. [C] directed respondent not to pay any of the moneys held by him to [E] inasmuch as the legal file was incomplete.

8. Respondent never requested the additional papers and did not pay over to [E] all or any of the $750 held by him nor did he reply to [E]'s letters requesting same.

9. [C] never gave respondent permission to use the $750 for his own use or for his legal fee.

10. Respondent has never returned the $750 to [C].

11. [C] has attempted to obtain the return of the sum but has been unable to locate or contact respondent.

12. Respondent never placed any of the $750 given to him by [C] in a bank account or any form of escrow account.

13. Respondent never advised [C] he would not hold the funds in an escrow account.

14. Respondent has commingled the $750 of [C]'s money with his own funds.

15. Respondent has converted and spent the $750 of [C] for his own personal use.

16. Respondent has never returned to [C] the legal file in question in the proceeding.

17. Respondent has never left a forwarding telephone number or address with [C].

## III. DISCUSSION

Respondent did not challenge the basic facts set forth in the two petitions. He admitted that he knew he was to pay an annual registration fee and keep the Office of the Court Administrator advised as to where he could be located. He only questioned whether or not he had specifically requested to be placed on inactive status. Arthur Birdsall, the Director of Membership Services for the Pennsylvania Bar Association, testified that in 1973, the only way an attorney could be placed on inactive status at the time of annual registration was to specifically request that action. Failure to file the required registration form and pay the fee resulted in suspension. (Subsequently Rule 219 was changed to provide for inactive status in both situations.) Mr. Birdsall was unable to produce the original registration form because the files are destroyed after three years. Whether or not [Respondent] requested inactive status is really irrelevant. The important thing is he knew that he was to register annually and pay the fee and failed to do so.

Respondent's only defense of his actions in the [A] matter was that he believed he was discharged by his client's wife when she called him in [ ], two

days before his brief was due to be filed with your honorable court. The testimony and exhibits establish beyond a reasonable doubt, however, that respondent had no real intention of filing the brief. Furthermore, [B]'s actions must be considered in light of the fact that she had been attempting to locate respondent for several weeks and had been unable to locate him. Her frustration, irritation and concern when she finally was able to reach respondent by telephone in [   ] was only exacerbated by his callous response.

With regard to [C], respondent maintained that his client had authorized the commingling of the funds and that he approved the application of the funds as an advance to respondent for costs and expenses. At the hearing, [C] refuted both contentions and, after considering the testimony and exhibits, the hearing committee accepted his version of the incident as does this board.

[Respondent's] misconduct in the various matters can be summarized as follows: He knowingly practiced law for several years while on inactive status; he received $1,350 as retainer to represent a defendant in an appeal from a murder conviction but failed to prepare or file a brief and closed his office and left the area without advising his client or his family, nevertheless keeping the entire fee; he received $750 from a client to be used to discharge the client's obligation but commingled the funds with his own and converted them to his own use so that they could not be applied for their original purpose or returned to his client. These actions are in violation of the following Disciplinary Rules of the Code of Professional Responsibility: 1-102(A)(4), (5) and (6) (conduct involving dishonesty, fraud, deceit, or misrepresentation, prejudi-

cial to the administration of justice and adversely reflecting on fitness to .practice law); 2-110(A)(1) and (2) (Withdrawing without permission of the tribunal and without protecting clients' interests); 3-101(B) (Practicing in violation of regulations); 6-101(A)(3) (Neglect of a legal matter); 7-101(A)(1), (2) and (3) (Intentionally failing to seek objectives of a client, carrying out a contract of employment, and prejudicing a client); 9-102(A) (Commingling funds); 9-102(B)(3) (Maintaining complete records of clients' funds and rendering appropriate accounts); 9-102(B)(4) (Promptly delivering to client requested funds; and wilful violation of the Rules of Disciplinary Enforcement 203(b)(3)).

At the second hearing dealing exclusively with the type of discipline to be imposed, respondent testified to a series of broken marriages, financial difficulties and a drinking problem. As a result of the combined effect of these tribulations, he abandoned his office and his clients, returned to [ ] for a brief period of time and ultimately moved to [ ] where he has been residing since late 1977. He has been employed as the manager of a bar and restaurant and has not been engaged in the practice of law. [Respondent's] testimony at the initial hearing and the second meeting indicates that he has not fully come to grip with the nature of his problems and committed himself to a program of rehabilitation. It is clear that, in order to protect the public, respondent must be foreclosed from the practice of law until he is able to demonstrate that he has the capacity and will to meet his professional obligations. In addition, the serious nature of his misconduct requires that he be prevented from resuming the practice of law for a substantial period of time.

The hearing committee recommended without

comment that respondent be disbarred. In the past, disbarment has been imposed where an attorney has been convicted of serious crimes,[1] misappropriated clients' funds on a large scale,[2] exhibited a long and continuing callous disregard for his clients' interests,[3] or appeared incorrigible.[4] In the opinion of the board, none of these elements are prevalent in the case at bar to a sufficient degree to warrant disbarment.[5] The board would recommend

1. In the Matter of Anonymous, No. 9 D.B. 73—Disc. Bd., No. 75, Disc. Dkt. No. 1—Supreme Ct. (1974).

Office of Disciplinary Counsel v. Anonymous, No. 22 D.B. 76—Disc. Bd., No. 125, Disc. Dkt. No. 1—Supreme Ct. (United States District Court for Eastern District of Pennsylvania, No. 75-272) (1977).

Office of Disciplinary Counsel v. Troback, 477 Pa. 318, 383 A. 2d 952 (1978).

2. In the Matter of Anonymous, No. 45 D.B. 73—Disc. Bd., No. 103, Disc. Dkt. No. 1—Supreme Court (1975).

In the Matter of Leopold, 469 Pa. 384, 366 A. 2d 227 (1976).

In the Matter of Green 470 Pa. 164, 368 A. 2d 245 (1977).

Office of Disciplinary Counsel v. Herrmann, 475 Pa. 560, 381 A. 2d 138 (1977).

Office of Disciplinary Counsel v. Anonymous, No. 8 D.B. 78—Disc. Bd., No. 192, Disc. Dkt. No. 1—Supreme Ct. (1978).

3. In the Matter of Anonymous, Nos. 11 D.B. 73 & 18 D.B. 73—Disc. Bd., No. 69, Disc. Dkt. No. 1—Supreme Ct. (1974).

Office of Disciplinary Counsel v. Anonymous, No. 37 D.B. 74—Disc. Bd., No. 91, Disc. Dkt. No. 1—Supreme Ct. (1975).

4. Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 345 A. 2d 616 (1975).

Office of Disciplinary Counsel v. Anonymous, Nos. 57 D.B. 73 & 44 D.B. 75 Disc. Bd., No. 142, Disc. Dkt. No. 1—Supreme Ct. (1977), 4 D. & C. 3d 672 (1977).

5. In the Matter of Anonymous, Nos. 38 D.B. 75 & 67 D.B. 75—Disc. Bd., No. 144, Disc. Dkt. No. 1—Supreme Ct. (1977), 4 D. & C. 3d 371 (1977).

instead that respondent be suspended from the practice of law for a period of five years. It is believed that this discipline adequately takes into consideration the seriousness of his transgressions and his personal difficulties. During the period of suspension, respondent can seek the treatment he needs and develop a full understanding of his professional responsibilities. In the event that he wishes to resume the practice of law, he can then file a petition for reinstatement at which time he will have the burden of establishing by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth and that such resumption will not be detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest.

## IV. RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that respondent [    ], be suspended for a period of five years with the right to apply for reinstatement at the end of said period of suspension and that respondent shall comply with all of the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement and sections 91.91-97 of the Disciplinary Board Rules.

Mary Bell Hammerman, John C. Anderson and Dennis C. Harrington did not participate in the adjudication.

## ORDER

EAGEN, *C.J.*, And now, January 14, 1980, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated January 4, 1980, is accepted; and it is ordered, that [Respondent], be, and he is forthwith suspended from the bar of this court and in all the courts under its supervisory jurisdiction, for a period of five years and until further order of the Supreme Court.

Respondent may apply for reinstatement at the end of the period of suspension and he shall comply with all of the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement and sections 91.91-97 of the Disciplinary Board Rules.

Mr. Justice Larsen dissents and is of the opinion that stealing a client's money warrants disbarment.

