## In re Anonymous No. 16 D.B. 77

Disciplinary Board Docket no. 16 D.B. 77.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

PEARLSTINE, *Board Member,* November 24, 1980—Pursuant to Pa.R.D.E. 208D of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

Respondent is an attorney who was admitted to practice law in the Commonwealth of Pennsylvania on December 7, 1951. His office is located at [   ] Building, [   ] Road, [   ], [   ] County, Pa.

The present proceeding arose out of a petition for discipline filed on behalf of the Office of Disciplinary Counsel on May 6, 1977. A hearing committee was appointed to hear the testimony and receive the evidence. They held hearings as follows: July 5, 1977, July 6, 1977, August 2, 1977, May 1, 1978, June 5, 1978 and May 15, 1979.

On May 6, 1980, the hearing committee filed its

report recommending that respondent's conduct as to Charge III of the petition for discipline evidenced professional misconduct and violation of the Code of Professional Responsibility and that Charges I and II be dismissed. The recommendation of the committee was that respondent be suspended for a period of six months.

Counsel for respondent filed his brief on exceptions followed by the designation of a panel consisting of Raymond Pearlstine, Chairman, Mary Bell Hammerman, Esq. and John M. Elliott, Esq., members, to hear oral argument. Oral argument was heard August 21, 1980 by a panel consisting of Raymond Pearlstine, Chairman, Mary Bell Hammerman and Sidney Krawitz, substituting for John M. Elliott. The board at its meeting on September 19, 1980, unanimously agreed to adopt the recommendation of the hearing committee and recommended that its opinion to the Supreme Court follow that recommendation.

## CHARGE I

In December, 1974, [A] consulted respondent with regards to the affairs of her late husband, [B], who was seriously ill at the time. Respondent advised her to withdraw all funds on deposit in any bank account of [A] and/or [B] and present them to him so that he could redeposit the said funds in an escrow account to prevent the dissipation of the funds by [B's] daughter by a previous marriage.

Pursuant to instructions, [A] withdrew $4778 from the Main Line Federal Savings and Loan Association and presented the check to respondent who promised to deposit the funds in an escrow account and to maintain said funds in the escrow account on her behalf.

Respondent commingled the funds with his own

funds, converted the funds to his own use and purposes, even though he had promised [A] that he would deposit and maintain the $4778 in an escrow account.

The following month, January 8, 1975, [B] died and for a period of one year following that date, [A] made numerous demands orally and in writing of respondent to account for and return the fund to her. In December of 1975, [A] communicated with [ ] Esq., the Chairman of the Fee Bill Committee of the [ ] County Bar Association and requested that he intervene with respondent on her behalf. The fee Bill Committee Chairman contacted respondent on or about January 13, 1976. Respondent presented [A] with a cashier's check drawn on the Provident National Bank in the amount of $4778.

This conduct clearly violated D.R. 9-102(A) and various other Disciplinary Rules complained of in the Disciplinary Board's complaint. There also is a violation of Rule 9-102(B)(3) requiring a lawyer to maintain complete records of funds, securities and other properties of the client. And finally, there is a clear violation of Rule 9-102(B)(4) requiring a lawyer to promptly pay or deliver to the client, as requested by a client, the funds in the possession of the lawyer which the client is entitled to receive.

The hearing committee [ ] dismissed this charge. The hearing committee was in error in its findings of fact (page 10) stating that [A] was given a receipt by [ ], the secretary of respondent, but that the money was to be held in an escrow account as security for [A]. P-2 which was introduced in evidence is a receipt signed by respondent and witnessed by respondent's secretary, acknowledging the receipt of a check from [A] in the amount of $4778, *"to be deposited and held in my escrow account as security for* [A] *."*

Beginning in July of 1975, [A] made numerous telephone calls and requests of respondent or his employes requesting the return of the same check she had given to respondent as well as the will which had been probated. After the pressure put upon respondent by the Chairman of the [ ] County Fee Bill Committee, [A] received a check from respondent drawn on his account for $4636, which was returned "Insufficient Funds." This check was received by her on Christmas Eve. On January 9, 1976, respondent sent [A] a letter saying that if the check for the amount which had been sent on December 23, 1975 would be returned, she would receive a cashier's check. On January 13, 1976, she received a cashier's check in the amount of $4778. Respondent's receipt, the retention of money, the failure to keep it in accordance with the Disciplinary Rules and failure to pay it over upon demand, was overwhelmingly proven.

## CHARGE II

A friend of respondent and his wife, visiting their home learned that respondent was sorely in need of $5,000 to pay a fine which was imposed upon him by the Court of Common Pleas of [ ] County in a criminal case. She loaned him $3,000 and delivered her check to him and he agreed to make payments to her which he failed to do. This was a private matter having no relation to his professional capacity as an attorney. He paid some payments on account and then defaulted in the repayment of this personal loan. Since it was a private matter between a friend of respondent and his wife, the hearing committee acted properly in dismissing this charge.

## CHARGE III

This charge recites that respondent was retained to represent the Estate of [C] by the Administrator of the Estate, [D] and that pursuant to that retention respondent received two checks, the first being the check of Prudential Insurance Company in the payment of death claim in the sum of $974.76 endorsed by [D] on March 2, 1973. The second check in the sum of $1,000 was also received by him. When [D] was requested by respondent to endorse the first check, he caused it to be cashed by an employe of respondent at his direction and he retained the proceeds and never deposited them in his attorney's account. The second check in the sum of $1,000 was also received by him and it was to be used for the purpose of effecting payment of the funeral bill of decedent to the [   ] Funeral Home. Respondent retained this money for over four years and failed to make the payment until suit was instituted against him personally by [   ] Funeral Home on the theory of a third party beneficiary contract. He did not file an answer to the complaint and judgment was entered by default. When execution was threatened he delivered a check to [   ] Funeral Home for the sum of $1279.30, representing the balance after applying the Social Security payment of $255 received by the Funeral Home. Despite testimony produced by respondent, there is no denial that he was in possession of the proceeds of the two checks and converted those proceeds to his own use.

[D] admitted that on separate occasions she received two payments of $100 and one payment of $25, because she refused to endorse the one check until she actually got $100 so that she actually received $225 out of the total proceeds of $1974.76. The initial conversion took place when, contrary to

instructions from [D], respondent had his law clerk, [ ] take the endorsed check for encashment and return with $974.76 in cash which was turned over to respondent and never was deposited by him in his escrow account. After frequent demand by the [ ] Funeral Home, a check in the sum of $1279.30 dated December 29, 1976 was drawn on respondent's bank account and delivered to [ ] Funeral Home only to have it returned because of insufficient funds in his bank account.

The funeral bill was finally paid by one [ ], Esq., a lawyer in [ ] on February 7, 1977 almost four years after the original funds were provided to respondent. There is still $495.46 unaccounted for which is being claimed by respondent as fees.

In conclusion, it is obvious that respondent converted the funds which were deposited with him by [D] for the purpose of paying the funeral bill and remitting the balance to her and the conversion which took place was not corrected and it was not until four years thereafter after repeated demands, after a lawsuit against him resulting in a judgment, that caused him to issue a bad check that was subsequently paid by someone else.

There was some statement made by respondent that [D] had a mental problem and was committed to the [ ] State Hospital. This was readily admitted by her, but the institution of the commitment proceedings was two years before respondent's theft of her funds. She was released prior to the incident in question and has not been committed again. It is submitted that such clients should be protected by the law and after stealing her money, respondent certainly was not justified in attacking her credibility because of her mental condition. As was stated by Disciplinary Counsel in his brief:

"Finally your Petitioner respectfully submits that

a lawyer acts unethically whether he steals from an emotionally ill person or one who is not. In fact, taking advantage of one who is ill is indeed more egregious."

## PRIOR DISCIPLINE

Respondent was previously suspended prior to the creation of the disciplinary system and received a three months' suspension by order of the [ ] County Common Pleas Court. This disciplinary action arose subsequent to his being sentenced to pay a $5,000 fine on ten counts of misfeasance, nonfeasance, etc. These activities, including the withholding of bail bond money, were during his service as a Justice of the Peace in [ ] Township, [ ] County. In addition to the order to pay the fine of $5,000 and an order of restitution, the court suspended sentence for three months. A suspension took place on November 1, 1972.

It is interesting to note that [C] died November 22, 1972 and that [D] endorsed the first check on March 2, 1973 and the second check on March 28, 1973, shortly after the termination of the three month suspension.

## CONCLUSIONS OF LAW

1. Respondent has violated D.R. 1-102(A)(4) in respect to misrepresentation only; A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

2. Respondent has violated D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

3. Respondent has violated D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

4. Respondent has violated D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

5. Respondent has violated D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

6. Respondent has violated D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

7. Respondent has violated D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

8. Respondent has violated D.R. 7-102(A)(5): In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact;

9. Respondent has violated D.R. 7-102(A)(8): In his representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to the Disciplinary Rule;

10. Respondent has violated D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited on one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein;

11. Respondent has violated D.R. 9-102(B)(3): A lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them; and

12. Respondent has violated D.R. 9-102(B)(4): A lawyer shall promptly pay or deliver to the client as

requested by a client, the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## RECOMMENDED DISPOSITION OF THE PETITION

The Pennsylvania Supreme Court recently addressed the issue of proper disciplinary action where an attorney converted funds of the client: In the Matter of Leopold, 469 Pa. 384, 366 A. 2d 227 (1976), respondent converted $5500 forwarded to him by his client for the purpose of settling claims. Although initially deposited in an escrow account, attorney Leopold used the money for purposes other than settling claims against his client. Despite numerous demands by his client Leopold failed to return the funds. Finally suit was instituted and a judgment entered against Leopold and the judgment was not satisfied. In approving the recommendation of the board that Leopold be disbarred, it stated, at p. 398:

"Here, we find it appropriate to emphasize that this petitioner's failure to make any recognizable effort to restore the misappropriated funds to his former client smacks of an irremissible indifference to his ethical obligations. We conclude that the flagrant nature of this petitioner's violation of the trust and confidence placed in him by his client merits disbarment."

Accordingly, the board rejects the recommendation of the hearing committee that Charge I be dismissed and hereby recommends that Charges I and III have been sustained and that respondent, [   ] be suspended from the practice of law for a period of six months.

## ORDER

ROBERTS, *J.*, And now, April 21, 1981 respondent having been suspended on November 24, 1980, and a rule to show cause why he should not be disbarred from the practice of law having been entered upon him, upon consideration of his answer to the rule, reply of the Disciplinary Board to the answer and brief in support of respondent's answer, it is ordered that the Rule be and is hereby discharged; and it is further ordered that respondent be and is hereby suspended for the period of two years from November 24, 1980. He may apply for reinstatement three months prior to the termination of the suspension.

Mr. Justice Larsen files a dissenting statement.
Mr. Justice Kauffman dissents.

## DISSENTING STATEMENT

LARSEN, *J.*, I dissent. Respondent, [   ], should be disbarred because he stole money from two of his clients.

On December 23, 1974, a client entrusted respondent with $4,778, which respondent deposited into his secretary's bank account and used for his own purposes. The client demanded the money back in July, 1975 and numerous times thereafter, with no success. Respondent sent the client a check on December 24, 1975, after the client complained to the Bar Association. The check bounced. Respondent finally made restitution on January 13, 1976.

In 1973 another client entrusted respondent, in connection with an estate, with two checks totalling $1,974.76. ($225 was returned to the client in cash.) Respondent converted the money to his own

use. In 1976, a funeral home, after numerous futile demands that respondent pay the estate funeral bills, sued respondent directly and recovered a default judgment of $1,279.30. Respondent issued a check in that amount on December 29, 1976, but the check bounced. The funeral bill was finally paid on February 7, 1977, nearly four years after the money was entrusted to respondent. As to the balance of the money, respondent exhibits a $200 release dated December 15, 1980, alleging that the client compromised her claim. The alleged release was given nearly eight years after the money was entrusted to respondent, and only after this court issued a rule to show cause why respondent should not be disbarred.

A two-year suspension, the majority's sanction, is too lenient. See Matter of Duffield, 479 Pa. 471, 474, 388 A. 2d 1028 (1978) (Larsen, J., in a dissenting opinion: "Any attorney who steals money from a client should be disbarred . . ."). Moreover, imposing less than disbarment is inconsistent with this court's decisions in recent cases of similar gravity. see Office of Disciplinary Counsel v. Lewis, 493 Pa. 519, 426 A. 2d 1138 (1981) (disbarment for theft of $3,954.66); Matter of Green, 470 Pa. 164, 368 A. 2d 245 (1977) (disbarment for theft of $1,481.96); Matter of Leopold, 469 Pa. 384, 366 A. 2d 277 (1976) (disbarment for theft of $5,500); cf. Office of Disciplinary Counsel v. Herman, 493 Pa. 267, 426 A. 2d 101 (1981) (disbarment for failure to comply with suspension order); Office of Disciplinary Counsel v. Grigsby, 493 Pa. 194, 200, 425 A. 2d 730, 733 (1981) (disbarment for false swearing; "[D]ishonesty on the part of an attorney establishes his unfitness to continue practicing law.").

Finally, a two-year suspension is wholly inconsistent with this Commonwealth's policy governing

criminal theft offenses. A common thief who has stolen more than $2,000 is guilty of a felony of the third degree, subject to a fine of $15,000 and imprisonment for seven years: 18 Pa.C.S.A. §§3903(a), 1101(2), 1103(3). If an attorney who steals is convicted of theft, an immediate suspension and a formal disciplinary proceeding would ensue: Pa.R.D.E. 214. Disbarment would be the appropriate sanction. Cf. Office of Disciplinary Counsel v. Troback, 477 Pa. 318, 383 A. 2d 952 (1978) (disbarment for conviction for interstate transport of stolen securities). It would be anomalous to reach a different result where a criminal prosecution has not occurred. The Supreme Court must be willing to police the lawyers. Leniency in dealing with attorney theft creates a class of privileged thieves and damages the image of the legal profession.

Additionally, it should be noted that rarely, if ever, are lawyers prosecuted criminally for stealing client's moneys . . . I do not know why . . . and, thus, the only sanctions imposed are the disciplinary measures meted out by this court.