426 A.2d 101

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

**v.**

**Frederick R. HERMAN, Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1980.

Decided March 9, 1981.

John W. Herron, Debra A. Cackowski, Philadelphia, for petitioner.

John J. Duffy, John Rogers Carroll, Philadelphia, for respondent.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

### OPINION OF THE COURT

KAUFFMAN, Justice.

Respondent, Fredrick R. Herman, was suspended from the practice of law for a period of three years by an Order of this Court dated March 9, 1978, effective April 9, 1978.[1]  In

---

1. The immediate grounds for suspension were gross neglect of a bankruptcy matter and deliberate misrepresentations to the client and others, acts which resulted in substantial losses to respondent's client and which were found by the Disciplinary Board to have constituted violation of a number of Disciplinary Rules, including DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).  The three year term of suspension was deemed appropriate also because respondent is a recidivist in disciplinary matters.  In June, 1963, respondent was censured by the Philadelphia Bar Association Committee of Censors for flagrant commingling and misappropriation of a client's funds in a personal injury case.  In April, 1970, respondent was censured by a disciplinary panel of the Court of Common Pleas of Philadelphia County for a

July, 1979, the Office of the Disciplinary Counsel filed a petition for additional discipline, alleging that respondent, in violation of Rules 217(d) and 217(e) of the Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E."), had flagrantly failed to comply with the Suspension Order by (1) failing to file with the Disciplinary Board ("Board") form DB–25 (verified statement of compliance) within the prescribed time;[2] (2) failing to advise clients of his suspension and consequent inability to represent them, and failing to withdraw as attorney of record in pending cases, and (3) taking on *new* matters at least six months *after* the effective date of suspension.

After a hearing on October 4, 1979, the Hearing Committee of the Board found ample evidence to support findings of fact sustaining the first two allegations, but chose not to reach the merits on the third. The Committee recommended that respondent be suspended for an additional twelve months to run consecutively with the original three years suspension. Disciplinary Counsel, petitioner here, filed with the Board a brief on exceptions to the Hearing Committee's report, arguing, *inter alia*, that the Hearing Committee erred in failing to reach the merits of the third allegation, *supra*, and that its recommendation of an additional one year suspension did not reflect the seriousness of respondent's misconduct. The Board, however, adopted the findings of the Hearing Committee and recommended the imposition of an additional twelve month suspension. On July 7, 1980, this Court rejected the Board's recommendation and

further instance of commingling and misappropriation of a client's funds. In October, 1970, respondent was reprimanded by the Committee of Censors for neglect of a personal injury claim. In June, 1975, respondent received an informal admonition from the Office of the Disciplinary Counsel, again for neglect of a personal injury claim.

2. Respondent disregarded two letters received from the Disciplinary Board in 1978 demanding that form DB–25 be filed forthwith. Even as late as oral argument in October, 1980, the record contained no such filing.

entered a Rule to Show Cause why respondent should not be immediately disbarred from the practice of law.[3]

Respondent's answer to the Rule does not deny the disciplinary violations here charged, but alleges mitigating circumstances and requests a further hearing before the Board.

In its review of the Hearing Committee's findings of fact, the Board's Report concluded:

> It is not to be doubted that Respondent did continue in the practice of law beyond the effective date of his suspension. In fact, he actually continued to hold himself out as a lawyer to the public generally and specifically refers to his 'client' in correspondence dated July 7 and September 18, 1978, some three and six months respectively after the effective date of his suspension. (Ex. P–39, P–40) He performed lawyer functions, signed his name as a lawyer and gave legal advice . . . The violations of the several rules by Respondent are patent and for which no explanation is offered.

Board Report, No. 20 DB 79, pp. 8–9.

Respondent made no attempt at his disciplinary hearing to contradict the extensive list of allegations charging that he had failed to comply with the Suspension Order. Rather, he contended that he had no responsibility to contact his former clients and advise them of his status because they were "assets" of the professional corporation with which he was associated:

> My position is at this time and as of February 8, that I really had no clients of my own as such. And under those circumstances, I could not notify any of those people that I am no longer a practicing attorney. They were not my clients. That is my main thrust, sir. Okay? (T–47)

In response to this manifestly disingenuous contention, the Board noted that, "The responsibility of the lawyer to maintain his professional independence remains constant even though provisions now exist which make possible the prac-

**3.** The scope of this Court's review is *de novo* as to both the findings and the recommendations of the Disciplinary Board. Pa.R.D.E. 208(e); *Matter of Green*, 470 Pa. 164, 368 A.2d 245 (1977).

tice of law in a corporate form for federal income tax purposes. [Neither] respondent nor any other ... attorney may avoid his [obligation] to observe the Rules of Disciplinary Enforcement by the subterfuge of denying any personal responsibility toward the individual client..." Board Report, p. 7.

Notwithstanding the evidence offered against him at the hearing, respondent sought to excuse his actions by the following assertion:

It is my opinion that I have complied with all of the Rules and Regulations of the Disciplinary Board with respect to my suspension; that I have not acted as an attorney; that I have done everything that I should under the Rules of the Disciplinary Board with respect to my suspension. (T–12) [4]

Respondent's sincerity is belied, however, by his total failure to demonstrate any good faith effort to comply with the Suspension Order. To the contrary, his behavior evidenced a deliberate intent to circumvent that Order. The record shows that after the effective date of suspension, he continued to communicate with several clients in a number of matters on stationery identifying himself as an attorney and member of the firm of Herman and Bayer. When a filing or court appearance was required, however, respondent would arrange for another attorney to take over the matter without the client's knowledge or consent, and the client would not become aware of the substitution until the time of trial or arbitration. This did not occur as an isolated incident. Respondent continuously represented and advised various clients until he was notified of an investigation of his activities by the Disciplinary Counsel in February, 1979. As late as April, 1979, he still had not withdrawn his

4. Respondent now seeks to disavow his previous position. In his answer to the Rule to Show Cause, he describes that position as "utterly mistaken" and "transparent", admitting that his failures of compliance were not only unsatisfactorily explained by his contentions, but, if anything, were aggravated thereby. Nevertheless, at least until the time of oral argument, respondent continued his defiance of the Board's demand that he file a verified statement of compliance with the Suspension Order.

appearance in a pending litigation matter. His name remained on the door to his office suite and in the lobby directory of his building. In short, respondent's law practice was effectively uninterrupted by this Court's Order of Suspension.

Faced with the overwhelming evidence of his unrepentant refusal to comply with the Suspension Order, and having abandoned his earlier efforts to excuse this behavior, respondent now seeks an opportunity to introduce evidence of personal problems which might tend to mitigate his conduct. He lists several family illnesses and deaths. All of these, however, occurred long before the commission of any of the offenses here at issue. He suffered a heart attack in April, 1978, which, he suggests, adversely affected his ability to comply with the applicable Rules of Disciplinary enforcement. But respondent's heart attack occurred *after* the deadline for notifying clients of his suspension, and his noncompliance with the Suspension Order continued well past the date that he returned to work. In any event, evidence of respondent's heart attack and resulting disability is not new information, for it was admitted and considered at the disciplinary hearing on October 4, 1979. Respondent's defense at that hearing was not that he was unable to comply, but that compliance was unnecessary because his clients were assets of a professional corporation.

Finally, he argues that this Court's issuance of the Rule to Show Cause has "changed the dimensions of this case", therefore requiring a new hearing. At all times since the Petition for Discipline was filed, however, respondent knew that the final disposition would be made by this Court. In imposing the original three year suspension, we rejected a recommendation of a one year suspension made by both the Hearing Committee and the Board. Respondent was aware that the Disciplinary Counsel had excepted to the recommendation of the Hearing Committee in the present matter, and had argued strongly for disbarment. Respondent has had ample opportunity to show cause why he should not be disbarred, and no further hearing is necessary.

With regard to the appropriateness of disbarment in this case, we note not only respondent's flagrant disregard of the Suspension Order, but also his long history of unprofessional and unethical conduct.[5] Unfortunately, respondent even yet does not appear to recognize the standards under which every attorney must practice.[6]

Accordingly, respondent is disbarred and prohibited from the practice of law in the Commonwealth of Pennsylvania.

## ORDER

AND NOW, this 9th day of March, 1981, it is ORDERED, as follows:

1.  That Fredrick R. Herman, is disbarred from the practice of law.

2.  That Fredrick R. Herman, shall comply with the provisions of Rule 217 of the Rules of Disciplinary Enforcement of the Supreme Court of Pennsylvania pertaining to disbarred attorneys.

---

5.  *See* note 1, *supra.*

6.  *See Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981); *Office of Disciplinary Counsel v. Suber Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981).