**In re Anonymous No. 47 D.B. 91**

Disciplinary Docket No. 47 D.B. 91.

CARSON, *Member,* March 11, 1993—

## HISTORY OF PROCEEDINGS

On April 22, 1991, the Office of Disciplinary Counsel filed a petition for discipline of respondent, charging her with mishandling two separate client matters.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esq., and included [    ], Esq. and [    ], Esq.

On November 19, 1991, the parties entered into detailed stipulations and agreed that respondent's misconduct had occurred as alleged. That same day, a hearing on the matter was held before Hearing Committee [    ], at which time respondent admitted violating Rules of Professional Conduct 1.3, 1.4(a), and 1.16(d). Both petitioner and respondent filed briefs to the Hearing Committee which requested the imposition of a public censure.

Hearing Committee [    ] filed its report on August 5, 1992, and recommended that respondent receive a public censure for her misconduct.

The matter was adjudicated at the October 23, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The following findings of fact are based upon the stipulation of the parties and documentary and testamentary evidence presented to the Hearing Committee.

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement (hereafter Pa.R.D.E.), with the power and the duty to investigate

all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on or about October 20, 1982.

(3) Respondent's office is located at [    ].

(4) In November 1987, [A] retained respondent to represent her in divorce and related matters against her husband, [B].

(5) After [A] retained respondent, [A] paid respondent a fee of $750 to commence the representation.

(6) At the time [A] retained respondent, [A] advised respondent that:

(a) the parties had been separated;

(b) the parties agreed that the divorce would be consensual;

(c) the parties had agreed that [A] was to be the primary custodian of the children;

(d) that [B] was making voluntary support payments to [A]; and

(e) the parties needed to resolve other equitable distribution issues prior to obtaining the divorce.

(7) On November 6, 1987, respondent timely instituted divorce proceedings in the Court of Common Pleas of [    ] County captioned *[A] v. [B]*, November Term, 1987, no. [    ].

(8) Subsequently, [C], Esq., entered his appearance on behalf of [B] in this divorce matter.

(9) After [C] entered his appearance, each attorney served interrogatories upon the other.

(10) By letter dated June 13, 1988, [C] wrote to respondent.

(11) A copy of the letter of June 13, 1988 is attached to these stipulations and incorporated as Joint Exhibit 1. [The exhibits have not been reprinted in this volume.]

(12) Respondent received the original letter of June 13, 1988 prior to June 20, 1988.

(13) After receiving the letter of June 13, 1988, respondent forwarded a copy of that letter to [A].

(14) [A] received this letter on June 20, 1988.

(15) Subsequent to [C's] letter of June 13, 1988, [B], in June 1988, ceased making support payments to [A].

(16) By letter dated June 27, 1988, respondent wrote to [C].

(17) [C] received respondent's letter.

(18) A copy of respondent's June 27, 1988 letter is attached as Joint Exhibit 2.

(19) After sending Joint Exhibit 2, respondent, during the period from June 1988 through March 1989, had various telephone conversations with [A] and scheduled meetings with [A] to discuss the divorce case.

(20) Those proposed meetings never took place.

(21) [A] would state that respondent never met with the client to formulate a proposal to settle the matter.

(22) During the time period mentioned above, respondent became ill, as a result of a pregnancy which had occurred during this time period.

(23) Respondent was hospitalized in September 1988 and October 1988. The latter hospitalization occurred as a result of her pregnancy, which ended in a miscarriage.

(24) During the time period mentioned above, no progress took place concerning the [A] divorce matter.

(25) During the time period mentioned above, [A] repeatedly telephoned respondent's office to learn the reasons for the delay in her divorce proceedings.

(26) On most of these occasions, respondent was unable to speak with [A].

(27) On the occasions when respondent was able to speak with [A], respondent explained that the reasons for the delay was respondent's illness, the difficulties with her pregnancy, the lack of secretarial help, and the illness of respondent's mother.

(28) Subsequently, in March 1989, respondent did prepare a draft of the property settlement and, by cover letter dated March 24, 1989, respondent forwarded it to the complainant for her review. A copy of the proposed property settlement and cover letter are attached to these stipulations and are incorporated as Joint Exhibits 3 and 4, respectively.

(29) On approximately April 27, 1989, respondent and [A] spoke on the telephone, at which time [A] voiced her approval of the proposed property settlement and respondent stated that she would immediately contact [C] concerning the proposed property settlement.

(30) As a result of that telephone conversation, complainant alerted her estranged husband to expect receipt of the proposed property settlement.

(31) Subsequently, [B] advised [C] that respondent would forward to him the proposed property settlement.

(32) By letter dated May 1, 1989, [C] wrote to respondent advising her that he had not received a copy of the proposed property settlement and requested that the proposed property settlement be forwarded to him. A copy of [C's] May 1, 1989 letter is attached to the stipulations and incorporated as Joint Exhibit 5.

(33) [C] would testify that he received no response from respondent.

(34) Between May 3, 1989 and June 5, 1989, [A] repeatedly called respondent's office to inquire into the status of her case.

(35) During these telephone calls, respondent was never available to accept these calls and complainant left messages for respondent to return the calls.

(36) Respondent did not return any of these telephone calls.

(37) By certified letter dated June 6, 1989, [A] advised respondent of her dissatisfaction with respondent's handling of her case and demanded an immediate response from her. A copy of [A's] June 6, 1989 certified letter is attached as Joint Exhibit 6.

(38) Respondent received [A's] letter of June 6, 1989.

(39) Respondent did not reply, in writing, to [A's] letter of June 6, 1989.

(40) In July 1989, respondent was advised by [D], Esq., that [A] had retained him to assume representation of her in the divorce matter.

(41) [D] then requested that respondent provide him with her file.

(42) Respondent did timely forward [A's] file to [D].

(43) On April 27, 1989, respondent received an informal admonition administered by Chief Disciplinary Counsel regarding a complaint made against her by [E], concerning her representation of him in a child custody and support matter.

(44) The basis for receiving the informal admonition was that respondent, following termination of the representation of [E], failed to return to [E] personal documents which he had deposited with her at the time of her representation and also that she failed to provide him

with an accounting and/or a refund of the unearned portion of the prepaid fee.

(45) By letter dated June 15, 1989, [E] again wrote to respondent and again demanded the return of the papers and the accounting and/or refund of the unearned portion of the fee. A copy of [E's] letter of June 15, 1989 is attached as Joint Exhibit 7.

(46) Respondent received [E's] letter of June 15, 1989.

(47) Respondent failed to respond to [E's] June 15 letter.

(48) On a date between June 15, 1989 and July 6, 1989, [E] contacted the Office of Disciplinary Counsel to advise it of respondent's continued failure to comply with his requests.

(49) By letter dated July 6, 1989, [F], Esq., counsel-in-charge of the District [ ] Office of the Office of Disciplinary Counsel wrote to respondent to advise her of [E's] complaint; to remind her of her responsibilities under R.P.C. 1.16(d); and to request that she immediately send to [E] the documents requested and an accounting for her services and/or refund of any unearned portion of the fee. A copy of [F's] letter of July 6, 1989 is attached and incorporated as Joint Exhibit 8.

(50) Respondent received [F's] letter of July 6, 1989.

(51) Respondent failed to specifically respond to [F's] letter of July 6, 1989.

(52) By request for statement of respondent's position (Form D.B.-7) dated August 25, 1989, respondent was placed on notice that her continued failure to provide this information constituted allegations of possible disciplinary violations. A copy of this DB-7 letter of August 25, 1989 is attached as Joint Exhibit 9.

(53) By letter dated August 31, 1989, addressed to [E], respondent returned to [E] all of his documents and

refunded the entire retainer. A copy of respondent's letter of August 31, 1989 is attached as Joint Exhibit 10.

(54) Respondent's prior disciplinary history includes the receipt of two private reprimands and one informal admonition (which led to Charge II of the instant petition for discipline), two of which were based on conduct which occurred when respondent was incapacitated due to a difficult pregnancy and a miscarriage. Respondent has testified that these experiences have shown her the need for a support system in the event she is unable to handle her obligations for some reason. Attorney [G], whose office is located in the same suite as respondent's, testified to his willingness to act as backup counsel for respondent should the need arise.

(55) Several members of the bar appeared before Hearing Committee [ ] and attested to respondent's excellent reputation for truthfulness and competence in the law.

(56) Two of respondent's clients also testified, stating that they had been very satisfied with respondent's handling of their legal matters.

(57) In addition to practicing law, respondent is very active in the bar association and community affairs, having served on several bar committees; the [ ] Association of Family Mediators; the Committee of [ ], which insures fair and honest elections in the [ ] area; the [ ] Center, which she has served as president; and the Institute for [ ].

(58) Respondent has also done pro bono work, especially in the area of domestic relations.

## CONCLUSIONS OF LAW

Respondent's conduct has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3, which requires a lawyer to act with reasonable diligence and promptness when representing a client;

(2) R.P.C. 1.4(a), which mandates that a lawyer keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(3) R.P.C. 1.16(d), which requires a lawyer to take reasonable steps to protect the interest of a client upon termination of representation.

## DISCUSSION

Petitioner, respondent, Hearing Committee [   ], and this board are all convinced that respondent acted unprofessionally in her handling of the [A] divorce matter and her failure to fulfill her duties upon termination of representation of [E].

The evidence clearly demonstrates that respondent failed to act with due diligence and promptness of her representation of [A] in her divorce, in violation of R.P.C. 1.3. This inaction was accompanied by a failure to keep [A] informed about the status of her case, despite repeated requests and the lapse of nine months, during which her client's husband terminated support payments. Although respondent received messages that [A] had telephoned repeatedly, she did not return any of her client's calls. Clearly this conduct constitutes a violation of R.P.C. 1.4(a).

In the [E] matter, respondent has acknowledged her failure to return [E's] entrusted property after termination of representation even after receiving an informal admonition, a blatant violation of R.P.C. 1.16(d).

The issue before this board is the appropriate measure of discipline for this respondent based on all of the facts surrounding her misconduct. "The primary purpose of our system of lawyer discipline is to protect the public

from unfit attorneys and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987). "[D]isciplinary sanctions are not primarily designed for their punitive effects." 515 Pa. at 80, 526 A.2d at 1185.

The ideal remedy in a matter like the instant one is a disciplinary sanction based on these goals. We achieve these goals when we formulate a disciplinary sanction based on the individual circumstances surrounding each respondent, including consideration of any mitigating factors. See *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982); *Office of Disciplinary Counsel v. Herman,* 493 Pa. 267, 426 A.2d 101 (1981). Respondent was undeniably suffering physically when much of her misconduct occurred, a fact we consider relevant to the ultimate disposition of this matter. She is contrite, has cooperated fully throughout the instant proceedings and is highly regarded in the legal community. We are confident she has taken the necessary precautions, namely appointment of backup counsel, which will prevent a recurrence of her misconduct. We are also aware that disciplinary counsel has recommended a less severe sanction than possible for this particular respondent.

In light of all these factors, it is our conclusion that the imposition of a private reprimand will adequately address this respondent's unprofessional conduct.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the respondent, [    ], shall receive a private reprimand. The expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Ms. Flaherty did not participate in the adjudication.

Mr. Saltz dissented.

428

## ORDER

And now, March 11, 1993, upon consideration of the report and recommendation of Hearing Committee [    ] filed August 5, 1992, it is hereby ordered that the said [respondent] of [    ] be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.