**In re Anonymous No. 125 D.B. 1997**

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

IOLE, *Member,* January 19, 1999—

## I. HISTORY OF PROCEEDINGS

Office of Disciplinary Counsel filed a petition for discipline against respondent, [ ], on October 15, 1997. The petition contained one charge, alleging that respondent violated Rules of Professional Conduct 1.6(a), 8.1(a), and 8.4(c) as a result of assertions that respondent is alleged to have made regarding his client, [A], to an investigator for the office of the federal public defender for the United States District Court for the [ ] District of Pennsylvania. Respondent filed an answer to the petition on November 17, 1997.

Disciplinary Hearings were held on February 23, 1998 before Hearing Committee [ ] comprised of Chair [ ],

Esquire, and Members [    ], Esquire, and [    ], Esquire. Respondent was represented by [    ], Esquire. Petitioner was represented by [    ], Esquire. The parties entered into a stipulation of certain facts dated February 9, 1998.

The committee filed a report on July 24, 1998 and determined that respondent violated Rules of Professional Conduct 8.1(a) and 8.4(c) but did not make any express determination regarding Rule 1.6(a). The committee recommended a public censure. A brief on exceptions and request for oral argument was filed by respondent on November 19, 1997. Petitioner filed a brief on exceptions on August 17, 1998. Oral argument was held on September 25, 1998 before a three-member panel of the board chaired by John E. Iole, Esquire, and consisting of board members Duke George Jr., Esquire, and Christine L. Donohue, Esquire.

This matter was adjudicated by the board on October 5, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1957 and was admitted to practice law in the Commonwealth of Pennsylvania in 1985. His office is located at [    ]. Respondent is subject

to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) In 1991, respondent began representing [A] concerning a federal criminal investigation into the activities of Dr. [B] involving alleged mail fraud and rendering illegal prescriptions. Dr. [B] allegedly had illegally prescribed narcotic drugs for [A] and certain of his relatives.

(4) Respondent had represented [A] previous to 1991 on civil matters unrelated to the criminal investigation.

(5) During the time he was being represented by respondent, [A] was granted immunity from prosecution. On October 26, 1993, during respondent's representation of [A], [A] testified before a grand jury investigating Dr. [B]. On January 26, 1994, Dr. [B] was indicted on five counts of mail fraud and six counts of unlawful distribution of narcotics.

(6) In May 1994, Assistant Federal Public Defender [C] was appointed to represent Dr. [B].

(7) Attorney [D] was an investigator assisting Attorney [C] in the defense of Dr. [B].

(8) Respondent consulted with and was treated by Dr. [B] between December 1993 and continuing into 1994.

(9) Dr. [B] told Attorney [D] that respondent revealed to him (Dr. [B]) that [A] had admitted to having perjured himself before the grand jury investigating Dr. [B].

(10) Respondent was present at Dr. [B's] office for purposes of treatment at the same time Attorney [D] was there investigating the defense of Dr. [B]. Though no meeting had been pre-arranged, at Dr. [B's] request, respondent agreed to meet with Attorney [D] while respondent and [D] were there together. Attorney [D] telephoned Attorney [C] and received approval to have this meeting.

(11) Attorney [D] and respondent discussed the charges against Dr. [B]. Attorney [D] spoke to Attorney [C] by telephone after this meeting. There is absolutely no documentary evidence of record that memorializes the substance of the discussion between Attorney [D] and respondent.

(12) Several weeks or months after this discussion, Attorney [D] again encountered respondent coincidentally. Attorney [D] and respondent spoke to each other. Attorney [D] spoke to Attorney [C] following this meeting. There is absolutely no documentary evidence of record that memorializes the substance of the discussion between Attorney [D] and respondent.

(13) In the discussions identified in paragraphs 11 and 12 above, respondent is alleged to have told Attorney [D] that [A] told him (respondent) that he ([A]) lied when he ([A]) testified before the grand jury investigating Dr. [B]. Respondent also is alleged to have agreed to testify, in Dr. [B's] criminal trial, to [A's] admission of falsehood before the grand jury.

(14) Upon request by Attorney [D] and Dr. [B], respondent agreed to be a character witness for Dr. [B] at Dr. [B's] criminal trial.

(15) As stipulated by the parties, [A] never told respondent that he ([A]) lied when he ([A]) testified before the grand jury.

(16) [A] was a witness for the prosecution at Dr. [B's] criminal trial and testified.

(17) During cross-examination of [A], Assistant Federal Public Defender [C] asked [A] the following question:

"Didn't you also tell your lawyer you had lied to the grand jury about Dr. [B] knowing his prescriptions for

your family weren't really for them?" Respondent's exhibit 1 at 13a.

This question prompted a stern series of comments from the United States District Judge presiding over the trial, during which the court questioned the propriety of such a question and chastised the assistant federal public defender for not raising the issue in previous conferences with the court. *Id.* at 13a-31a. The court ruled that this question was improper and gave a curative instruction to the jury.

(18) The assistant federal public defender attempted but did not successfully subpoena respondent to testify at the trial. There is absolutely no evidence that respondent attempted to evade service of the subpoena.

(19) During the course of petitioner's investigation of respondent for possible disciplinary violations, respondent wrote a letter to petitioner dated November 8, 1995. In that letter, respondent denied that he ever told Attorney [D] that [A] admitted telling a falsehood before the grand jury.

(20) Before the hearing committee, eight witnesses testified to respondent's reputation for honesty, and approximately 12 additional witnesses were available to further testify to this.

(21) Respondent has no prior history of discipline.

## III. CONCLUSIONS OF LAW

After carefully considering all of the evidence presented by the parties, along with the able briefs and oral argument of counsel, we conclude that respondent has *not* violated the following Rules of Professional Conduct with which he was charged:

(1) R.P.C. 1.6(a)—"A lawyer shall not reveal information relating to a representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation. . . ."

(2) R.P.C. 8.1(a)—"A lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter."

(3) R.P.C. 8.4(c)—"It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

## IV. DISCUSSION

The Disciplinary Board conducts a de novo review of all disciplinary matters that come before it upon recommendation by a Hearing Committee. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). The findings made by the Hearing Committee are guidelines for the board's analysis of the conduct that brought respondent into the disciplinary system, but the board is not bound by the committee's findings. *Office of Disciplinary Counsel v. Walker,* 469 Pa. 432, 366 A.2d 563 (1976). The board is free to formulate its own opinions and conclusions as to whether respondent has breached the Rules of Professional Conduct. *Matter of Green,* 470 Pa. 164, 368 A.2d 245 (1977).

The burden is on the Office of Disciplinary Counsel to prove by a preponderance of the evidence "an attorney's unprofessional conduct and the proof of such conduct must be clear and satisfactory." *Berlant Appeal,*

458 Pa. 439, 328 A.2d 471 (1974). After consideration of the entire record before the Hearing Committee, the Hearing Committee's findings and recommendation, and the objections, briefs and oral argument of petitioner and respondent, the board respectfully does not agree that respondent violated any of the Rules of Professional Conduct with which he was charged.

At the evidentiary hearing, petitioner's proof consisted primarily of testimony from Attorney [D] and Assistant Federal Public Defender [C]. Their testimony tended to support the violations charged. The substance of respondent's defense consisted of testimony from respondent. Respondent's testimony directly refuted the violations charged.

After considering the credibility and demeanor of the witnesses, the committee concluded:

"Both the respondent and Attorney [D] made frank and straightforward appearances at the hearing before the committee. Were their testimony standing in a vacuum, the committee would be unable to state with certainty that petitioner has convinced us of the merits of its case. It is the committee's finding, however, that there is simply no rational reason for Attorneys [D] and [C] to testify falsely and perjure themselves before the Hearing Committee. It is primarily for this reason that the committee has accepted Attorneys [D] and [C's] testimony." Hearing Committee report at 6.

The Hearing Committee also observed that respondent presented "significant character evidence." *Id.* at 10. In the end, the committee found violations because it could not reconcile the testimony. *Id.*

For the board to conclude that respondent has violated the rules with which he has been charged, it would have

to accept the following extraordinary propositions, which it declines to accept based on the evidence of record:

"Respondent willingly revealed a client confidence to Attorney [D] (*i.e.,* telling [D] that [A] admitted to having lied to the grand jury).

"That revelation by respondent was *itself* a lie (*i.e.,* [A] never made any admission to respondent).

"Respondent agreed to provide untrue testimony against his client ([A]) based on [A's] supposed admission that respondent actually fabricated.

"Respondent then lied to the Office of Disciplinary Counsel about having told [D] that he would testify to his client's admission."

In addition, the board has considered an important circumstance that makes these propositions even less credible—[A] was an immunized government witness whose immunity would have been placed in jeopardy by respondent's alleged fabrication.[1]

Under the peculiar circumstances of this case, it would require compelling evidence for petitioner to meet the "clear and satisfactory" standard necessary to prove a disciplinary violation. The board has carefully reviewed the testimony and documentary exhibits. The board con-

---

1. The Hearing Committee did not expressly pass upon the charged violation of R.P.C. 1.6(a). Presumably, respondent was charged with this violation because he allegedly revealed a client confidence ([A's] admission of perjury) to Attorney [D] without permission. This charge creates an inconsistency. The basis for at least one of the other two alleged violations is that respondent violated Rule 8.4(c) when he supposedly revealed a client confidence that never was made (falsely telling Attorney [D] that [A] admitted to perjury). Thus, to find violations of Rule 8.4(c), one has to conclude that *no* revelation occurred. The board points this out because it further illustrates improbable circumstances that cause the board to conclude that there has not been a sufficient showing that any violation of Disciplinary Rules occurred.

cludes that the testimony of Attorney [D] and Assistant Federal Public Defender [C] simply is not sufficient to support the violations with which respondent is charged. In addition, the board considers the total absence of evidence on the following points to be critical in this case:

"(1) According to [D] and [C], they discussed respondent's statements immediately after each of the two times respondent is claimed to have made them— but not a single contemporaneous memo or telephone note of these discussions (or of respondent's revelation) ever was produced or introduced into evidence.

"(2) Respondent's testimony obviously would be (and was) a bombshell at the trial of Dr. [B]—yet no notes or memoranda regarding respondent's anticipated testimony were introduced into evidence, even though it was the federal public defender's policy and practice to have such memoranda prepared and it was the personal practice of Attorney [D] to make such notes.

"(3) Respondent, a critical witness for the defense, was not successfully subpoenaed to testify at trial though there is no evidence that he attempted to evade service.

"(4) The assistant federal public defender's office researched the ramifications of respondent's revelation and the propriety of inquiring into that subject of [A] during cross-examination, yet no memorandum of this research was introduced into evidence."

The board is mindful that the federal public defender's office strenuously objected to petitioner's efforts to gain cooperation in its disciplinary investigation. The board also is mindful of the fact that the documentary evidence referred to above would have been difficult to obtain, if it existed at all. While the board expressly is not setting forth a principle that would require such evidence to be

obtained and introduced to prove a violation in all such cases, the board finds the absence of this evidence in the present case to be a factor that requires dismissal of the charges.

The Hearing Committee believed that, because it could not reconcile the testimony, it would have to conclude that either [D] and [C] were lying before the committee, or that respondent was lying. Ultimately, the Hearing Committee decided against respondent because it could not think of any reasons why [D] or [C] would lie. The presence of conflicting testimony in this case of charged professional misconduct is not sufficient, in the board's view, to support the violations charged. Especially in a case where critical documentary evidence would tend to directly prove or disprove a central fact necessary to the case (whether respondent made the revelation with which he is accused), but was not introduced, we conclude that the proof falls short of the necessary clear and satisfactory standard.

In view of its disposition regarding the charged violation of Rule 8.4(c), the board finds no violation of Rule 8.1(a). That charge was based upon respondent's assertion in his letter to petitioner that he did not make the disputed revelation regarding [A] to Attorney [D]. Respondent's letter was a response to petitioner's investigation of respondent. Petitioner's theory is that, if respondent is in violation of Rule 8.4(c) for lying to Attorney [D], he is in violation of Rule 8.1(a) for telling petitioner that he never lied to Attorney [D]. Accordingly, because the board finds no violation of Rule 8.4(c), it finds no violation of Rule 8.1(a). Moreover, while the board acknowledges that Rule 8.1(a) serves a useful and important purpose by safeguarding the truth in disciplin-

ary proceedings, *Duffield,* 537 Pa. at 499, 644 A.2d at 1192-93, the board likewise believes that violations of this rule should be charged with special care. Violations of Rule 8.1(a) subject the respondent to additional discipline for participating in the disciplinary process—once on the violation charged, and a second time on the denial of that violation. If employed routinely, disciplinary charges based on failed defenses would freeze respondents from cooperating in petitioner's investigations. Petitioner is invested with duty and discretion regarding the investigation and charging of disciplinary violations, and the board believes that petitioner will exercise that discretion in a manner that protects the truth-finding aspects of the disciplinary process while simultaneously encouraging respondents to cooperate in that same process.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the charge against respondent, [   ], be dismissed.

Vice-Chair Caroselli did not participate in the consideration and disposition of this matter.

Board Member Schultz did not participate in the October 5, 1998 adjudication.

## ORDER

And now, January 19, 1999, upon consideration of the report and recommendation of Hearing Committee [   ] filed July 24, 1998 and after oral argument before a three member panel of this board, it is hereby ordered that the charges against [respondent] docketed at no. 125 D.B. 1997 be dismissed.